IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

AMME M. HOGAN,

       Plaintiff,

vs.

NEW MEXICO PUBLIC DEFENDER
DEPARTMENT, JOHN L. WALKER,
and CRISTINA JARAMILLO, in their
official and individual capacities,

       Defendants.

No. CIV 98-0421 PK/WWD

MEMORANDUM OPINION AND ORDER

THIS MATTER comes on for consideration of Defendants' Motion for
Summary Judgment filed April 21, 1999 (doc. 32), and the court, being fully
advised in the premises, finds that motion is well taken and that (1) Plaintiff's
First and Fourteenth Amendment claims pursuant to 42 U.S.C. § 1983 (contained
in counts I and II) against Defendant New Mexico Public Defender Department
(NMPDD) and Defendants John L. Walker and Cristina Jaramillo in their official
capacities should be dismissed for lack of subject matter jurisdiction; (2)
Defendant NMPDD should be granted summary judgment on Plaintiff's Title VII
claim (count III), and that claim should be dismissed against Defendants John L.
Walker and Cristina Jaramillo; (3) Defendants John L. Walker and Cristina

Jaramillo in their individual capacities should be granted summary judgment on Plaintiff's First and Fourteenth Amendment claims pursuant to 42 U.S.C. § 1983 (contained in counts I and II); and (4) all remaining supplemental state claims (contained in counts I, II and IV) should be dismissed without prejudice, given the disposition of the federal claims.

<u>Background</u>

Plaintiff Amme M. Hogan filed suit against her employer, Defendant NMPDD, and two supervisors, Defendants Walker and Jaramillo, in their official and individual capacities, after she was terminated from her position as an attorney with the NMPDD. In her Amended Complaint for Damages and Demand for Jury filed July 1, 1998 (doc. 3), she alleged (1) retaliation for speech and activities protected by the First Amendment and the New Mexico Constitution art. II, § 17 (count I), (2) procedural and substantive due process violations contrary to the Fourteenth Amendment and the New Mexico Constitution art. II, § 18 (count II), (3) gender discrimination contrary to Title VII (count III), and (4) breach of contract (count IV).

Defendants move for summary judgment on all counts. <u>See</u> Motion for Summary Judgment by Defendants filed April 21, 1999 at 24 (doc. 32). They claim that (1) the Eleventh Amendment bars all claims except the Title VII claim against the NMPDD and the § 1983 claims against Mr. Walker and Ms. Jaramillo

in their individual capacities; (2) anti-union animus was not a motivating factor in the termination of Ms. Hogan and, even if it were, Mr. Walker and Ms. Jaramillo would not be liable in their individual capacities because neither displayed anti-union animus; (3) neither Mr. Walker nor Ms. Jaramillo, in their individual capacities, denied Ms. Hogan procedural or substantive due process; (4) Ms. Hogan has failed to present a prima facie case of gender discrimination under Title VII; (5) Ms. Hogan's contract claim has no merit; and (6) Ms. Hogan failed to mitigate her damages.

Ms. Hogan, an Attorney III with the Appellate Division of the NMPDD in Santa Fe transferred to the Metro Division in Albuquerque in July 1994, where she was supervised by Mr. Walker. In 1990 or 1991, she began attending union organizing meetings and became the chief union contract negotiator in 1992. In 1995, she became a union steward. Ms. Hogan transferred to the misdemeanor trials section in 1995, and Ms. Jaramillo became her supervisor.

In October 1995, Ms. Hogan informed Ms. Jaramillo of her intent to file a grievance under the statewide union contract, seeking overtime pay for attorneys. Within several weeks, Ms. Hogan received a negative performance evaluation. Ms. Hogan's alleged sexual harassment of two female co-workers was also investigated around this time.

In 1996, Ms. Hogan sought medical advice and treatment for job-related stress from Dr. Marcia Landau, a licensed psychologist. In the spring of 1996,

Ms. Hogan requested administrative leave to attend a trial seminar offered by Gerry Spence in August. This request was denied on June 20, 1996. That same day, Dr. Landau wrote a letter to the NMPDD, recommending two weeks of medical leave for Ms. Hogan; Ms. Hogan later requested an additional week. During the month of July, she received two Notices of Contemplated Action of Suspension based, respectively, on an ex parte contact with a judge and her failure to be prepared for trial. Ms. Hogan responded to the first notice through her lawyer but did not respond to the second notice. She claims that both notices were based on groundless accusations.

Ms. Hogan returned to work on July 29, 1996 after taking medical leave, in addition to a week's vacation. On July 29, she filed additional sick leave forms, asking for thirty-six days of medical leave, including the month of August, and attached a supporting letter from Dr. Landau. Hogan then drove to Wyoming to attend the trial seminar. After discovering that she was attending the seminar, despite the denial of her administrative leave request, then Chief Public Defender T. Glenn Ellington sent her a letter charging her with being away without leave.

On August 30, 1996, the NMPDD issued a third Notice of Contemplated Action, related to Ms. Hogan's alleged abuse of sick leave, to which Ms. Hogan's counsel replied on September 13, 1996. On September 20, Ms. Hogan attended a pretermination meeting with Mr. Ellington; the parties dispute whether this meeting constituted an impartial hearing. The NMPDD terminated her

employment in a Notice of Final Action, dated September 26, 1996 and effective in October 1996.

Discussion

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An important function of summary judgment is to eliminate factually-unsupported claims. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The nonmovant may not rest upon her pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). This means that the nonmovant must produce evidence supporting her claims. See Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 671 n.1 (10th Cir. 1998).

Although the parties dispute many subsidiary factual issues, once a movant has identified an element of a claim that the nonmovant cannot prove, all other factual disputes concerning that claim become immaterial, and the court may properly enter summary judgment. See Celotex, 477 U.S. at 322-23. The summary judgment material relied upon by the nonmovant is viewed in the light most favorable to her; however, that material must contain probative evidence that would allow a trier of fact to find in her favor. See Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 249-50 (1986).


## A.  Section 1983 Claims Against NMPDD

The Eleventh Amendment provides that the judicial power of the United States shall not "extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend XI.  "Though the text of the Amendment does not expressly so provide, the Supreme Court has interpreted the Amendment to apply to federal question suits against a State brought in federal court by the State's own citizens."  Ellis v. University of Kansas Med. Ctr., 163 F.3d 1186, 1195 (10th Cir. 1999) (citing Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261 (1997)).

In analyzing the applicability of Eleventh Amendment immunity to the NMPDD, the court must first determine whether the NMPDD is an arm of the state.  This question of federal law "can be answered only after considering the provisions of state law that define the agency's character."  See Duke v. Grady Mun. Sch., 127 F.3d 972, 975 (10th Cir. 1997) (quoting Regents of the Univ. of California v. Doe, 117 S. Ct. 900, 904 n.5 (1997)).  The court considers two general questions: (1) the degree of autonomy given to the agency and (2) the extent of financing the agency receives independent of the state treasury.  See Buchwald v. University of New Mexico Sch. of Med., 159 F.3d 487, 494 n.3

(10th Cir. 1998); <u>Duke</u>, 127 F.3d at 974. Under New Mexico law, all salaries and expenses of the NMPDD must be authorized by the Secretary of Finance and Administration and paid by his warrants. <u>See</u> New Mexico Stat. Ann. § 31-15-5(B) (Michie 1984). The NMPDD is administratively attached to the state's criminal justice department. <u>See</u> § 35-15-5(A). Accordingly, it is an arm of the state for Eleventh Amendment purposes.

It is well-established that states enjoy Eleventh Amendment immunity from suits under § 1983. <u>See</u> <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 66 (1989); <u>Quern v. Jordan</u>, 440 U.S. 332, 345 (1979). Thus, Ms. Hogan may not bring any of her § 1983 claims against the NMPDD in federal court. However, because Congress intended plaintiffs to have a federal forum for Title VII actions against the states, <u>see</u> <u>Fitzpatrick v. Bitzer</u>, 427 U.S. 445, 457 (1976), the court must consider the merits of Ms. Hogan's federal gender discrimination claim.

## B. Title VII Claim

"[T]he proper method for a plaintiff to recover under Title VII is by suing the employer, either by naming the supervisory employees as agents of the employer or by naming the employer directly." <u>Sauers v. Salt Lake County</u>, 1 F.3d 1122, 1125 (10th Cir. 1993) (quoting <u>Busby v. City of Orlando</u>, 931 F.2d 764, 772 (11th Cir. 1991)); <u>see</u> <u>also</u> <u>Haynes v. Williams</u>, 88 F.3d 898, 899 (10th Cir. 1996); <u>Lankford v. City of Hobart</u>, 27 F.3d 477, 480 (10th Cir. 1994).

Having named the NMPDD as a defendant under Title VII, Plaintiff cannot

properly bring Title VII claims against Mr. Walker and Ms. Jaramillo. <u>See</u>

<u>Haynes</u>, 88 F.3d at 899 (noting that a Title VII suit must proceed *either* against

individuals in their official capacity *or* against the employer directly). It is not

entirely clear whether Ms. Hogan meant to include the two individual defendants

in her Title VII claim; however, in an abundance of caution, the court will

dismiss them.

To make a prima facie case of gender discrimination under Title VII, Ms.

Hogan must show that (1) she belonged to a protected class; (2) she was

adversely affected by the decision to terminate her; (3) she was qualified for the

position of Attorney III with the NMPDD; and (4) she was treated less favorably

than her male counterparts. <u>See</u> <u>Cole v. Ruidoso Mun. Sch.</u>, 43 F.3d 1373, 1380

(10th Cir. 1994).

Ms. Hogan claims that she was discriminated against on the basis of her

gender because other male attorneys with the NMPDD were not terminated for

behavior comparable to hers. Defendants moved for summary judgment on the

grounds that none of the alleged misconduct by men was comparable; NMPDD

never disciplined Ms. Hogan for sexual harassment, so the alleged lack of

discipline of her male counterparts for sexual harassment is irrelevant; and many

of Ms. Hogan's accusations constitute hearsay, rather than arising from her

personal knowledge. In response, Ms. Hogan contends that one Rick Goldman

refused to return from a Gerry Spence seminar in 1995 and was demoted, rather than terminated, for his refusal.  Ms. Hogan's citations to her affidavit and the deposition of Defendant Walker completely fail to establish that Mr. Goldman had similar job responsibilities or supervision, let alone that Ms. Hogan had personal knowledge of these events.  By Ms. Hogan's own admission, Mr. Goldman performed different work for the NMPDD than she did, and he received approval to attend the seminar before he was called back.  <u>See</u> Defendants' Memorandum in Support of Motion for Summary Judgment  ("Defendants' Memo.) filed Apr. 21, 1999 (doc. 33), Ex. A. at 307 (Hogan Dep.).  The same is true for one Jeff Rein.  <u>See</u> <u>id.</u> at 306.

Plaintiff has not satisfied the fourth element of a prima facie case under Title VII because none of the incidents she cites demonstrates that "she was treated less favorably than her similarly-situated male counterparts."  <u>Lowe v. Angelo's Italian Foods, Inc.</u>, 87 F.3d 1170, 1175 (10th Cir. 1996).  She has not established that Mr. Goldman was a similarly-situated member of the opposite gender for the purposes of a prima facie case.  <u>See</u> <u>id.</u> (holding that plaintiff failed to establish prima facie case because male coworkers were not similarly-situated "with respect to their job functions").  It is not enough merely to say that he is a similarly-situated male; Ms. Hogan had the burden of identifying facts contained in affidavits, deposition transcripts or exhibits that tend to prove it. <u>See</u> <u>Adler</u>, 144 F.3d at 671 n.1.  Because the few items she cites do not speak to

whether Mr. Goldman was similarly-situated, Ms. Hogan has failed to carry her burden.

Moreover, even if we assume that Ms. Hogan has established a prima facie case of gender discrimination, she has not shown that the NMPDD's stated reason for terminating her was a pretext. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973); Randle v. City of Aurora, 69 F.3d 441, 451 (10th Cir. 1995). At the summary judgment stage, once an employer advances a nondiscriminatory reason for the adverse employment decision in response to a plaintiff's prima facie case, the plaintiff is only entitled to proceed to trial if she "presents evidence that the defendant's proffered reason . . . was pretextual – i.e. unworthy of belief." Randle, 69 F.3d at 451. Here, the NMPDD asserts that it terminated Ms. Hogan for medical leave abuse, while Ms. Hogan contends that she was discharged because of her gender. The NMPDD has met its burden of producing "some evidence" that it discharged Ms. Hogan "for a facially legitimate and nondiscriminatory reason." Aramburu v. Boeing Co., 112 F.3d 1398, 1403 (10th Cir. 1997); see also Beaird v. Seagate Technologies, Inc. 145 F.3d 1159, 1168 (10th Cir.), cert. denied, 119 S. Ct. 617 (1998).

Plaintiff then must show that this proffered reason is not worthy of belief by presenting evidence that similarly-situated males received different treatment for comparable behavior. See Aramburu, 112 F.3d at 1404. As noted above, Ms. Hogan has failed to demonstrate that any male employee "with the same

10

supervisor and . . . subject to the same standards governing performance evaluation and discipline" was treated more leniently for attending a trial seminar during a period of sick leave. Id. (quoting Wilson v. Utica Park Clinic, Inc., No 95-5060, 1996 WL 50462 (10th Cir. Feb. 7, 1996) (unpublished)). The material she cites does not show the circumstances surrounding Mr. Goldman's or Mr. Rein's attendance of the seminar, nor does it demonstrate that they performed similar work in the same supervisory environment. Because the "evidence does not allow for a comparison which eliminates nondiscriminatory reasons for differential treatment," id. at 1406, summary judgment for the NMPDD would still be warranted on the Title VII claim, even if Ms. Hogan had established a prima facie case.

## C. Section 1983 Claims Against Mr. Walker and Ms. Jaramillo in their Official Capacities

The Eleventh Amendment bars federal jurisdiction over a state official acting in his or her official capacity in a suit for money damages. See Kentucky v. Graham, 473 U.S. 159, 169 (1985); Ellis, 163 F.3d at 1196. Accordingly, Ms. Hogan may not seek money damages for alleged harms against her by Ms. Jaramillo and Mr. Walker in their official capacities.

Although Ms. Hogan's Amended Complaint seeks monetary relief and does not seek injunctive relief, the Pretrial Order generally indicates that the relief

sought includes reinstatement and expungement of records, together with compensatory and punitive damages.  <u>See</u> Pretrial Order filed June 3, 1999 at 2 (doc. 36).  After reviewing the pleadings, including the Pretrial Order and the Initial Pretrial Report filed October 16, 1998 at 2 (doc. 20), it is clear that Ms. Hogan at no time sought to amend her Amended Complaint to include a prayer for injunctive relief on her § 1983 claims against Mr. Walker and Ms. Jaramillo in their official capacities and, in fact, specifically stated that no amendments were anticipated.  Thus, in light of the Eleventh Amendment case law cited above, summary judgment is appropriate on all of Ms. Hogan's First and Fourteenth Amendment claims under § 1983 against the individual defendants in their official capacities.

### D.  Section 1983 Claims Against Mr. Walker and Ms. Jaramillo in their Individual Capacities

The Eleventh Amendment does not bar § 1983 claims against state officers in their individual capacities if "such suits proceed on the theory that when the officers act unconstitutionally, they are stripped of their official or representative character and are thus subjected to the consequences of their conduct."  <u>Whitney v. State of New Mexico</u>, 113 F.3d 1170, 1173 (10th Cir. 1997) (quoting <u>Houston v. Reich</u>, 932 F.2d 883, 887 (10th Cir. 1991)).  However, to prevail on an individual capacity claim, "[t]he plaintiff must show the defendant personally

participated in the alleged violation." Jenkins v. Wood, 81 F.3d 988, 994 (10th Cir. 1996). This standard requires a showing that the defendant "personally directed the violation or had knowledge of [a] violation [by a subordinate] and acquiesced in its continuance." Id. at 995. Before the court reaches this analysis, it must first establish that Ms. Hogan's constitutional rights were violated.

1.  First Amendment – Retaliation

Ms. Hogan alleges that Mr. Walker and Ms. Jaramillo, acting in their individual capacities, infringed her First Amendment rights by retaliating against her for her union activity. Approximately one month after she informed Ms. Jaramillo that she planned to file a union grievance, Ms. Hogan contends, Ms. Jaramillo began to record in detail her alleged deficiencies. Among other evidence, Ms. Hogan cites a letter from Ms. Jaramillo to Mr. Walker, accusing Ms. Hogan of incompetence and recommending her termination. See Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment filed Apr. 21, 1999 at 22 (doc. 34) (citing Ex. H (Jaramillo Ltr.)). She also claims that Ms. Jaramillo denied her legitimate requests for leave time.

In her Amended Complaint, Ms. Hogan charges the defendants collectively with "giving [her] a lower performance evaluation, following [her] union activities, . . . reprimand[ing] her unfairly, request[ing] other Department

employees to write negative things about [her] and to falsely accuse [her] of various things, and impos[ing] restrictive directives on her." Amended Complaint at 4 (doc. 3). Mr. Walker apparently signed the Notices of Contemplated Action which the NMPDD sent to Ms. Hogan in July and August of 1996. However, with regard to Mr. Walker, the Amended Complaint merely states that "the Defendant Department, through Defendant Walker, informed [her] that her employment with the Department was terminated." Id.

To prevail on a First Amendment retaliation claim, Ms. Hogan must show, inter alia, that she engaged in protected speech and that retaliation for such speech was a motivating factor in her termination. See Butler v. City of Prairie Village, Kansas, 172 F.3d 736, 745-46 (10th Cir. 1999). Both the Supreme Court and the Tenth Circuit have held that, "[t]o be protected, employee speech must involve a matter of public concern." Paradis v. Montrose Mem'l Hosp., 157 F.3d 815, 817 (10th Cir. 1998) (citing Connick v. Myers, 461 U.S. 138 (1983)). "[S]peech relating to internal personnel disputes and working conditions ordinarily will not be viewed as addressing matters of public concern." David v. City and County of Denver, 101 F.3d 1344, 1355 (10th Cir. 1996) (citing Connick, 461 U.S. at 147-49); see also Martin v. City of Del City, No. 97-6336, 1999 WL 354786, at * 7-8 (10th Cir. Jun. 3, 1999) (holding that petition by public employee must meet public concern test and rejecting reasoning of San Filippo v. Bongiovanni, 30 F.3d 424 (3d Cir. 1994), in which union grievance

14

was held to touch on matter of public concern); Andersen v. McCotter, 100 F.3d 723, 728 (10th Cir. 1996) (noting that protected speech must "involv[e] a matter of public concern and not merely an issue internal to the workplace").  Although the Tenth Circuit elsewhere has suggested that the associational right to engage in union activity is not subject to the "public concern" test, see Saye v. St. Vrain Valley Sch. Dist., 785 F.2d 862, 867 n.1 (10th Cir. 1986) (noting defendants' concession on appeal), it has not so held.  But see Morfin v. Albuquerque Pub. Sch., 906 F.2d 1434, 1438 (10th Cir. 1990) ("The [First Amendment] right to join and participate in a labor union prohibits retaliation against an employee who files a grievance with the union.").

Ms. Hogan contends that seeking an interpretation of the collective bargaining agreement that would result in overtime compensation for public defenders is a matter of public concern, but she fails to explain why this is so.  Such a grievance seems to fall outside the accepted definition of a "matter of public concern" as a "matter of political, social, or other concern to the community" raised by a citizen, Connick, 461 U.S. at 146, and instead to constitute a grievance articulated by the plaintiff in her capacity as an employee.  See David, 101 F.3d at 1355.  However, given the Tenth Circuit's language in Morfin, 906 F.2d at 1439, finding a clearly established right to associate with a labor union, the court must further examine the relationship between Ms. Hogan's filing of the union grievance and her termination.

Even if Ms. Hogan's union grievance and speech related to it is protected by the First Amendment, she has not shown that anti-union animus constituted a "motivating factor" in any of the acts attributed to Mr. Walker or Mr. Jaramillo. See Butler, 172 F.3d at 746. Although she claims that Mr. Ellington once stated that union activity was "airing the department's dirty laundry," see Defendant's Memo., Ex. A at 100-01 (Hogan Dep.), she points to no evidence that either Mr. Walker or Ms. Jaramillo made similar comments or harbored anti-union biases.

The Tenth Circuit has stated that "mere temporal proximity of Plaintiff's protected speech to his termination is insufficient, without more, to establish retaliatory motive." Butler, 172 F.3d at 746. Although retaliation against protected speech need not be the only factor leading to the adverse employment decision, a plaintiff must prove that it played a substantial role. See Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977) (stating that plaintiff has burden to show that "his conduct was constitutionally protected, and that his conduct was a 'substantial factor' or to put it in other words, that it was a 'motivating factor'" in the adverse employment decision). Thus, this court does not hesitate to grant summary judgment for the individual defendants on the First Amendment retaliation claims against them in their individual capacities

2. Procedural Due Process

Ms. Hogan's Amended Complaint alleges that "Defendant denied the

Plaintiff procedural due process by taking various personnel actions against the Plaintiff without affording her notice, the opportunity to respond to the charges and without adequately informing her of the nature of the charges." Amended Complaint at 6 (doc. 3). In her Memorandum in Opposition to Defendants' Motion for Summary Judgment at 18 (doc. 34), she states that her "procedural due process claims center around the failure of the NMDPD [sic] to do any kind of pre-determination review."

Ms. Hogan was afforded an opportunity to respond, through her lawyer, to the Notices of Contemplated Action that Mr. Walker signed. See, e.g, Defendant's Memo., Pl. Dep. Ex. 9, 10, 17 & 18. Careful consideration of the record reveals that, although Ms. Jaramillo and Mr. Walker documented their dissatisfaction with Ms. Hogan's performance, and Mr. Walker signed the Notices of Contemplated Action, other supervisory personnel not named as defendants had ultimate responsibility for terminating Ms. Hogan and for deciding which procedures were followed.

Even assuming that Ms. Hogan raised an issue of material fact as to the impartiality of the pretermination hearing, she has failed to show that Mr. Walker or Mr. Jaramillo "personally participated in the alleged violation," Wood, 81 F.3d at 994, for neither of them conducted the hearing. Then Chief Public Defender Ellington, who is not a defendant in this case, presided over the hearing and signed the Notice of Final Action. See Defendants' Memo., Pl. Dep. Ex. 18. Mr.

Ellington's alleged bias, failure to answer Ms. Hogan's questions or let her present her case simply cannot be imputed to Mr. Walker or Ms. Jaramillo. The federal procedural due process claims against these defendants in their individual capacity cannot survive a motion for summary judgment. See id.

3.  Substantive Due Process

Ms. Hogan charges both Mr. Walker and Ms. Jaramillo with violating her substantive due process rights with their "outrageous and extreme" conduct. Amended Complaint at 6 (doc. 3).  Assuming she has a property interest in her employment, she "must do more than show that the government actor intentionally or recklessly caused injury [to her] by abusing or misusing government power," Tonkovich v. Kansas Board of Regents, 159 F.3d 504, 528 (10th Cir. 1998) (quoting Uhlrig v. Harder, 64 F.3d 567, 574 (10th Cir. 1995)). Rather, she must demonstrate that "the behavior of the governmental officer [was] so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."  County of Sacramento v. Lewis, 118 S. Ct. 1708, 1717 n.8 (1998).

Ms. Hogan claims that Ms. Jaramillo micro-managed her work, wrote distorted accounts of her shortcomings, denied her leave requests, and recommended to Mr. Walker that she be fired.  Even if true, these allegations do not establish that Ms. Jaramillo's actions were "completely arbitrary or

18

irrational," <u>Tonkovich</u>, 159 F.3d at 530, particularly given the performance issues that arose between Plaintiff and several judges. <u>See</u> Defendant's Memo., Pl. Dep. Ex. 7, 11. Allegations that Mr. Walker yelled at his subordinates and restricted Ms. Hogan's ability to contact witnesses in the first disciplinary action also fail to shock the conscience. Moreover, like the procedural due process claim, the substantive due process claim relies heavily on an aspect of the termination process that neither Mr. Walker nor Ms. Jaramillo controlled – the pretermination hearing held by Mr. Ellington. The conduct specifically attributable to Mr. Walker and Ms. Jaramillo does not rise to the level of outrageous or shocking to the conscience, as the Supreme Court requires. <u>See</u> <u>Lewis</u>, 118 S. Ct. at 1717 n.8 (1998). Accordingly, summary judgment for Mr. Walker and Ms. Jaramillo in their individual capacities is appropriate on the federal substantive due process claims.

## E. State Law Claims

Given the resolution of the federal claims, only the supplemental state law claims remain. When a federal claim no longer supports supplemental jurisdiction, the Tenth Circuit has recognized that, consistent with 28 U.S.C. § 1367(c)(3), the ordinary response will be to dismiss the state claims without prejudice. <u>See</u> <u>Roe v. Cheyenne Mountain Conference Resort, Inc.</u>, 124 F.3d 1221, 1237 (10th Cir. 1997); <u>Ball v. Renner</u>, 54 F.3d 664, 669 (10th Cir. 1995);

19

see also United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."). The court declines to exercise jurisdiction over the state claims against these Defendants; those claims will be dismissed without prejudice.

NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that Defendants' Motion for Summary Judgment filed April 21, 1999 (doc. 32), is granted as follows:

(1) Plaintiff's First and Fourteenth Amendment claims pursuant to 42 U.S.C. § 1983 (contained in counts I and II) against Defendant New Mexico Public Defender Department (NMPDD) and Defendants John L. Walker and Cristina Jaramillo in their official capacities are dismissed for lack of subject matter jurisdiction;

(2) Defendant NMPDD is granted summary judgment on Plaintiff's Title VII claim (count III), and that claim is dismissed against Defendants John L. Walker and Cristina Jaramillo;

(3) Defendants John L. Walker and Cristina Jaramillo in their individual capacities are granted summary judgment on Plaintiff's First and Fourteenth Amendment claims pursuant to 42 U.S.C. § 1983 (contained in counts I and II);

(4) all remaining supplemental state claims (contained in counts I, II and

IV) are dismissed without prejudice.

DATED this 16th day of June 1999, at Santa Fe, New Mexico.


_Paul Kelly J._
_____
United States Circuit Judge
Sitting by Designation

Counsel:

Gail A. Heglund and Hannah B. Best, Albuquerque, New Mexico, for Plaintiff

Kevin M. Brown and Terrill Elise Pierce, Albuquerque, New Mexico, for
Defendants.